Edgar Johnson and wife, Mamie Johnson

*v.*

The City of Greeneville and Greene County, Tennessee.

435 S.W.2d 476.

(*Knoxville*, September Term, 1968.)

Opinion filed November 22, 1968.

KYLE K. KING and W. E. BOWMAN, Greeneville, Tenn., for plaintiffs in error.

O. C. ARMITAGE, JR., and CONWAY MAUPIN, Greeneville, Tenn., for defendants in error.

Mr. Chief Justice Burnett delivered the opinion of the Court.

This suit was instituted by the Johnsons against the Town and County seeking damages for a depreciation in value of their home as the result of the operation of airplanes from the Greeneville Municipal Airport. The Town and County demurred on numerous grounds which will not be set out seriatim herein, but will all be considered in the course of this opinion. The trial judge sustained the demurrer and dismissed the lawsuit, and this appeal resulted.

In the outset the Town and County moved to dismiss this action because the assignments of error do not show wherein the action of the court was erroneous and do not give reference to the record where any errors of law appear. Rule 14 of this Court is thus relied upon and cases cited under which said rule has been invoked. After

considering the briefs in this matter, we are satisfied that the briefs and arguments sufficiently answer the questions presented so as not to violate the rule relied upon, and thus it is that the motion is overruled.

The declaration alleges that the plaintiffs have owned their home, which is located on 1.91 acres of land since 1937, and that in 1964 and 1965 the defendants purchased and acquired lands for an airport and constructed an airport thereon with a runway of 5,000 feet in length; that this runway will accommodate most planes including jet aircraft; and that this airport was not completed until October 23, 1966. The present suit was commenced on September 27, 1967, or within one year after the completion of the airport and the planes started to fly.

It is likewise alleged that the runway is within three hundred feet of the dwelling house of the plaintiffs and it is shown by an amendment to the declaration that from twenty-five to thirty flights come over their property at altitudes from one hundred twenty-five (125) to three hundred (300) feet as of the time that this suit was filed and that this number of flights is greatly increasing. It is likewise alleged in this declaration that this runway comes within three hundred feet of the dwelling house of the plaintiffs which is at the south end of the runway. It is likewise alleged that the Town and County acquired flight easements of one-half mile in length at the north end of the runway but that they did not acquire flight easements at the south end over the property of the plaintiffs.

It was alleged likewise in the declaration that the noise and vibrations of said planes are extremely loud and cause noticeable physical discomfort and great mental

264

fear and apprehension, disturbs their rest and sleep, and this also interferes with the use of their land. They charge as a result of these flights the value of their property has depreciated from $20,000.00 to $10,000.00 and that the planes thus coming over their property amount to a substantial interference with their property and a direct invasion of their property, and that a taking of their property has been made by these defendants and that by this taking of this private property for public use without first paying just compensation is contrary to Article 1, Section 21 of the Constitution of the State of Tennessee.

This suit was brought for compensation which is sought in an action for inverse condemnation under Section 23-1423, T.C.A. Inverse condemnation is the popular description of a cause of action against a governmental defendant to recover the value of the property which has been taken in fact by a governmental defendant even though no final exercise of the power of eminent domain has been attempted by the government. See many authorities cited in the footnotes to the Code Section, supra. The authorities do not all agree about the problem here presented, but it is certainly generally held that freedom from unreasonable noise is a right which, in a proper case, the law will protect. See, for a full discussion of this question in a case exactly like the one now before us, the case of *Thornburg v. Port of Portland*, 233 Or. 178, 376 P.2d 100. This *Thornburg* case likewise cites *United States v. Causby*, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206, and the last case on the subject by the Supreme Court of the United States of *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585, both of which we have very carefully read.

The *Griggs* case was a case wherein an almost identical factual situation is set forth as is alleged herein. We feel though that the plaintiffs in error here have a much stronger case on appeal than Griggs had in that lawsuit. The Supreme Court of Pennsylvania had decided against Griggs on the questions here involved, and this holding was reversed by the Supreme Court of the United States wherein that court held that noise, vibrations, and fear caused to occupants of houses located near a county airport by constant and extremely low overflights interfere with use of owners' property so as to amount to "taking", in the constitutional sense, of air easements for which compensation must be made.

The above holding is the Supreme Court's answer to the argument that the City and County in operating this airport did not operate the airplanes and consequently they are not liable. This holding, of course, is to the contrary and it was held that the City and County, who are the authorities that operate the airport, are liable for the taking as a result of flights that come into the airport.

The *Griggs* opinion likewise relied upon and quotes from an opinion from the Supreme Court of Washington, *Ackerman v. Port of Seattle,* 55 Wash.2d 400, 413, 348 P.2d 664, 671, 77 A.L.R.2d 1344, thus:

"* * * an adequate approach way is as necessary a part of an airport as is the ground on which the airstrip, itself, is constructed, * * *."

The court then says further:

"Without the 'approach areas' an airport is indeed not operable. Respondent, in designing it had to acquire some private property. Our conclusion is that by constitutional standards it did not acquire enough."

We suggest a reading of the *Ackerman* opinion as it is very full and clearly stated. It is not necessary for us to again try to restate the positions that are there so well stated. At the conclusion of the case just referred to from Washington we find a very comprehensive note in 77 A.L.R.2d 1344 on the question here involved.

■ If easements are thus taken by the low flying of the airplanes over the property of parties surrounding the airport, compensation must be paid to the owners of the land thus burdened. It seems that this question is settled by the three cases hereinbefore cited and quoted from.

The defendants take the position that under the facts alleged in this declaration that they do not constitute a taking and as authority for this position rely upon *Batten v. United States*, 306 F.2d 580, Tenth Circuit, 1962. This case is referred to and distinguished under a factual situation identical to that here in *Thornburg v. Port of Portland*, supra, and we agree with what is said in the *Thornburg* case thus:

"As pointed out in a dissent by Murrah, Chief Judge, the interference proven was substantial enough to impose a servitude upon the lands of the plaintiffs, and under the Causby and Griggs cases equally could have constituted a taking. 306 F.2d at 585. In view of the importance of the question presented in the Batten case, and in view of the strong dissent by the chief judge, it would be premature to speculate now upon the final direction the federal courts will take. We believe the dissenting view in the Batten case presents the better-reasoned analysis of the legal principles involved, and that if the majority view in the

Batten case can be defended it must be defended frankly upon the ground that considerations of public policy justify the result: i. e., that private rights must yield to public convenience in this class of cases. The rationale of the case is circular. The majority said in effect that there is no taking because the damages are consequential, and the damages are consequential because there is no taking.''

The defendants, as well as the trial judge, likewise rely upon our case of *Ledbetter v. Beach,* 220 Tenn. 623, 421 S.W.2d 814, to the effect that there was no physical taking of the land and that flying over the land as alleged in the declaration does not constitute a taking and that thus these people are in the same position as anybody else and since there is no physical invasion of their property defendants in error are not liable for any damages. They likewise cite on this same proposition *State v. Rascoe, et al.,* 181 Tenn. 43, 178 S.W.2d 392, but it will be noticed that in the *Rascoe* case, the late Mr. Chief Justice Green, who wrote that opinion for the Court, said in reference to this proposition:

''However, it does not appear that the dwelling house of anyone else is so close to the base nor directly in line with one of the runways. Moreover, it does not appear that the land of anyone else was taken in condemnation proceedings for this air base. Other lands going into the project were acquired by purchase.''

This statement was made by the Court in the *Rascoe* case after the Court had held that the trial court erred in not allowing the property owner to prove that airplanes taking off in the direction of their home ''came over the dwelling house at a very low elevation, making a

tremendous noise and, as it appeared, barely missing the house. She always entertained the fear that they might not attain sufficient elevation in the short distance between the end of the runway and the house to avoid striking the latter.'' Thus it is we have the above statement of the Court through one of its ablest speakers that the facts alleged in the declaration of this case constituted a taking and constitute damage. Then, too, this same argument and objection was made in *Thornburg v. Port of Portland,* supra, and that court said this:

"Granting the similarity, it must be noted, however, that the matter is one of degree. We do not decide the positions of the parties are the same. The Port points to our previous decisions in support of the proposition that the nuisance (nontrespassory) invasions by government are not compensable. The cases cited by the Port did not, however, hold that a nuisance so aggravated as to amount to a complete ouster or deprivation of the beneficial use of property was not a taking. That question does not appear to have been passed upon by our court. * * *''

"As noted above, this court has expressed a policy against allowing compensation in several situations where there was no actual physical injury to the real property. The cases used terms such as 'consequential damages', or 'damages which do not amount to a "taking" ', or *'damnum absque injuria.'* Such expressions describe conclusions that the court reached when it had decided that the facts involved did not measure up to the standard necessary for a taking. Such injuries were then held to be noncompensable as a matter of law, under the policy against allowing compensation for mere 'damages'. Such decisions, which were

no doubt right in cases of single-instance wrongs, prove too much when applied to continuing and substantial interference with the use and enjoyment of property. Ordinarily, in a case of a continuing interference, whether it is substantial enough to constitute a taking will be for the jury to determine.''

We thus adopt this statement of the Oregon court in answer to the argument made in the brief of defendants in error where they cite the *Ledbetter* case, supra, and other cases.

This Court many years ago held, and properly so, that the obtaining of property for public use where the property is either actually appropriated or the common or necessary use of the property is rendered impossible or seriously interrupted constitutes a taking. *Barron v. Memphis,* 113 Tenn. 89, 80 S.W. 832, and *Pumpelly v. Green Bay & Mississippi Canal Co.,* 80 U.S. 166, 13 Wall. 166, 20 L.Ed. 557. Several years later the Court held that any diminution of the value of property peculiarly affected and directly invaded at least, which is not shared by the public generally, is a taking within the meaning of the constitutional provision. *Illinois Cent. Railroad Co. v. Moriarity.* 135 Tenn. 446, 186 S.W. 1053. This is a taking under our Constitution hereinabove referred to. Thus it is even if this airport is for a public purpose, and it is conceded so, and alleged to be under the statutes (T.C.A. 42-326 et seq.) then the public does take property under our Constitution and under the United States Constitution, Amendment 14.

The trial judge held, and this was ably argued by the defendants, that the one year statute of limitations (T.C.A. 23-1424) was applicable and that no action can

be maintained herein because of the showing that the land for this airport was purchased more than a year before the suit was instituted. In the beginning of our opinion we pointed out that the suit was brought within one year from the time the airport was completed, or within a year from the time any airplanes started to fly from this airport. We think that this one year statute means that it begins to run within one year from the time of the injury instead of one year from the date of construction. *Morgan County v. Neff,* 36 Tenn.App. 407, 256 S.W.2d 61, and *East Tenn. etc. R. Co. v. Gouge,* 30 Tenn. App. 40, 203 S.W.2d 170.

 This statute does not apply to an actual taking but for acts committed as a result of the taking. This seems reasonable because the very appropriation of the land for an airport does not constitute a taking until these airplanes started to flying low and doing things that are alleged in this declaration that they did, and consequently there was no reason for these people to start an action when they heard that an airport was to be built there. We think this suit was instituted within the statute and the action is not barred. The case of *Jones v. Cocke County,* 57 Tenn.App. 496, 420 S.W.2d 587, 589, is cited as authority for this proposition. Unquestionably we think this statement is correct when applied to a factual situation as here. In the *Cocke* County case, after quoting from various other cases, the court says this:

"Under these authorities we think it is clearly shown that in a suit such as this, the landowner's cause of action does not accrue until an injury has been suffered. Although this suit was not brought until some five years after the completion of the bridge and embankment, it was brought within one year from the

date of injury and in our opinion, it was timely filed.''

We agree.

■■ As said before, we think without peradventure of a doubt, under the allegations of the declaration, which, when demurred to, must be taken as true as to the factual situation and reasonable inferences from the facts alleged must also be taken as true, that this lawsuit will have to be reversed and remanded for further pleading and possibly a trial before a jury. In the case of *Thornburg v. Portland,* supra, we find this statement, which we think is clearly applicable for the trial of such case before a jury:

"The idea that must be expressed to the jury is that before the plaintiff may recover for a taking of his property he must show by the necessary proof that the activities of the government are unreasonably interfering with his use of his property, and in so substantial a way as to deprive him of the practical enjoyment of his land. This loss must then be translated factually by the jury into a reduction in the market value of the land.''

Thus it is that the judgment below is reversed and the cause remanded for further action commensurate with what is here said.