Richard E. JACKSON and Jaquelyn
R. Jackson, Appellants,

v.

METROPOLITAN KNOXVILLE
AIRPORT AUTHORITY,
Appellee.

Supreme Court of Tennessee,
at Knoxville.

Jan. 29, 1996.

Charles M. Clifford, Maryville, Chris Ralls,
Maryville, for appellants.

E. Bruce Foster, Jr., Bass, Berry & Sims, Knoxville, for appellee.

William L. Gibbons and Caren B. Dantzker, Evans & Petree, Memphis, Eugene Greener, Jr. and Harriette R. Coleman, Goodman, Glazer, Greener & Kremer, P.C., Memphis, for amici curiae.

## OPINION

ANDERSON, Chief Justice.

■ The issue presented by this case is whether the complaint states a cause of action for inverse condemnation by alleging interference in the use and enjoyment of real property caused by noise, vibration, and pollutants from airplanes that fly near, but not directly over, the plaintiffs' property. We hold that it does. The judgment of the Court of Appeals is reversed and the cause remanded to the trial court.

## BACKGROUND

The plaintiffs, Richard and Jaquelyn Jackson, who own property in a residential subdivision located near McGhee Tyson Airport in Blount County, Tennessee, filed a complaint for inverse condemnation against the defendant, the Metropolitan Knoxville Airport Authority, which operates McGhee Tyson Airport.

The complaint alleges that as a result of a new runway extension, noise, vibration, and pollutants have increased from airplanes that fly near, but not directly over their property. Before the runway was extended, the complaint alleges that the Airport Authority performed an environmental and noise impact study which specifically found that the Jacksons' property would be rendered incompatible with residential use as a result of the noise and vibration from aircraft. The complaint concludes by alleging that the extension of the runway with the accompanying increase in noise, vibration, and pollutants has resulted in a taking of the Jacksons' property by the Airport Authority for which compensation is due.

The Airport Authority moved to dismiss the complaint for failure to state a cause of action for inverse condemnation, since the Jacksons had failed to allege a physical invasion of their property through direct overflight of aircraft. Tenn.Code Ann. § 29–16–123 (1980). The trial court granted the motion to dismiss. The Court of Appeals affirmed the judgment of the trial court, concluding that existing precedent requires direct overflight as a prerequisite to state a cause of action for inverse condemnation based on noise, vibration, and pollutants from aircraft. Thereafter, we granted the Jacksons' application for permission to appeal to determine this important issue.

## INVERSE CONDEMNATION

Article I, § 21 of the Tennessee Constitution provides:

> That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives or without just compensation being made therefor.

■ This particular constitutional provision recognizes the governmental right of eminent domain, which is the power to take private property without the consent of the owner, but it limits that right by entirely prohibiting the taking of private property for private purposes, and by requiring just compensation when private property is taken for public use. *Southern Ry. Co. v. City of Memphis*, 126 Tenn. 267, 148 S.W. 662 (1912); *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

■ In Tennessee, the Legislature has implemented this constitutional provision by its passage of eminent domain and inverse condemnation statutes. *Hopper v. Davidson County*, 206 Tenn. 393, 333 S.W.2d 917 (1960); Tenn.Code Ann. § 29–16–101 through § 29–16–126 (1980) and Tenn.Code Ann. § 29–17–101 through § 29–17–804 (1980 & 1995 Supp.). Eminent domain refers to a legal proceeding in which a government asserts its authority to condemn property, while inverse condemnation is a shorthand

description of the manner in which a landowner recovers just compensation for a taking of property when condemnation proceedings have not been instituted. *Johnson v. City of Greeneville,* 222 Tenn. 260, 435 S.W.2d 476, 478 (1968).

In this case, the Airport Authority did not commence condemnation proceedings. Instead, the Jacksons filed an action for inverse condemnation. Our review of the judgment dismissing the complaint for failure to state a cause of action requires us to take all material facts as true and construe the complaint liberally in the plaintiffs' favor. After doing so in this case, we must determine whether the Jacksons have alleged facts sufficient to establish a jury question on whether a taking of property has occurred. *Gray v. McDonald's Corp.,* 874 S.W.2d 44 (Tenn.App. 1993).

### IS DIRECT OVERFLIGHT REQUIRED?

■ Not every destruction or injury to property by governmental action constitutes a "taking" in the constitutional sense. *PruneYard Shopping Center v. Robins, supra.*

■ For example, in Tennessee, one of our earlier cases described a constitutional "taking" sufficient to support an action for inverse condemnation as "the obtaining of property for public use where the property is either actually appropriated or the common or necessary use of the property is rendered impossible or seriously interrupted." *Barron v. City of Memphis,* 113 Tenn. 89, 80 S.W. 832, 833 (1904). Several years later, this Court held that a diminution in the value of property peculiarly affected and directly invaded, which is not shared by the public at large, is a taking. *Illinois Cent. R. Co. v. Moriarity,* 135 Tenn. 446, 186 S.W. 1053 (1916). Each of these early Tennessee cases involved either continuing physical occupa-

tion of property or a total destruction of property rights.[1]

More recently, in the context of determining whether airport flights constitute interference sufficient to establish a taking, this Court held that a taking occurs, and an action for inverse condemnation will lie, when an entity with the power of eminent domain substantially deprives an owner of the beneficial use and enjoyment of property. The interference must be continuing and substantial. Whether an interference is substantial enough to constitute a taking ordinarily will be a question for the jury to determine. Interference with the use and enjoyment of property sufficient to constitute a jury issue on taking was stated in this case upon plaintiffs' allegations that their property value had been diminished by half as a result of airplanes flying directly over their property at altitudes from 125 to 300 feet. *Johnson,* 435 S.W.2d at 476, 480.

In this appeal, the Jacksons argue that under the *Johnson* standard, they have stated a cause of action for inverse condemnation. The Airport Authority also relies upon *Johnson* to support its theory that direct physical invasion of property is required to establish a compensable taking and a prima facie cause of action for inverse condemnation. It argues, therefore, that dismissal of the Jacksons' complaint was warranted because there is no allegation of a physical invasion of property, which in this case would require an allegation of direct overflight. The Airport Authority also relies upon *Ledbetter v. Beach,* 220 Tenn. 623, 421 S.W.2d 814 (Tenn.1967), in which this Court concluded that plaintiffs had failed to allege a compensable taking because the plaintiffs did not "allege a physical taking of any of their land." *Id.,* 220 Tenn. at 630, 421 S.W.2d at 817.

Reliance by the Airport Authority on both *Johnson* and *Ledbetter* is misplaced. *Ledbet-*

---

1. In *Barron,* the City of Memphis enlarged a pier supporting a bridge, and thereby diverted the current of a stream so that it overflowed plaintiff's lot, destroyed a large part of the lot by erosion, and undermined the pillars of a house standing on the lot. In *Moriarity,* the property owner's easement of access was destroyed by the elevation of railroad tracks which completely closed a street.

*ter* is distinguishable from the present case, in that the plaintiffs in *Ledbetter* failed to allege that the construction of the highway specially damaged their property in a manner that was not shared generally by other landowners adjacent to the public highway. The only allegation was that the building of the highway itself in proximity to their property was a taking. In *Johnson,* the alleged interference with the plaintiff's beneficial use and enjoyment of property resulted from direct overflights. It, therefore, was not necessary for this Court to decide whether an allegation of direct overflight *is required* to state a cause of action for inverse condemnation in an airport case.

We relied upon two United States Supreme Court decisions in *Johnson.* In the first case, *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), which has been characterized as a "landmark" decision,[2] the Supreme Court held that frequent and regular flights of military aircraft which directly and immediately interfere with the enjoyment and use of land constitute a taking within the meaning of the Fifth Amendment to the United States Constitution.

Likewise, in the second case, *Griggs v. County of Allegheny,* 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Court held that regular and continuous daily flights at altitudes ranging from 30 to 300 feet over plaintiff's residence, which interfered with plaintiff's household members' sleep, caused windows to rattle and plaster to fall, and interfered with plaintiff's household members' health, constituted a "taking" in the constitutional sense.

In both of those cases, the plaintiffs had alleged some direct overflight. Consequently, in neither case, did the U.S. Supreme Court directly address the issue of whether a plaintiff states a cause of action for inverse condemnation in the absence of an allegation of direct overflight.

We, however, also extensively relied upon the leading case of *Thornburg v. Port of*

*Portland,* 233 Or. 178, 376 P.2d 100 (1962). There, the Oregon Supreme Court held that systematic flights which pass close to private land, but not directly overhead, constitute a taking. In so concluding, the Oregon Court acknowledged, but rejected, a line of federal cases holding "that while repeated flights at low levels directly over private land may amount to a taking for which compensation must be paid, repeated flights nearby but not directly overhead must be endured as mere 'damages' which, for various reasons, may not be compensable." *Id.,* 376 P.2d at 103 (citations omitted).

The Oregon court also specifically discussed *Batten v. United States,* 306 F.2d 580 (10th Cir.1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 506, 9 L.Ed.2d 502 (1963), and rejected the physical invasion theory adopted by the *Batten* majority and, instead, embraced the view of the dissent, which concluded that a physical invasion is not required to constitute a taking.

In so holding, the Oregon court adopted what it characterized as the "better reasoned rule" stating:

> If we accept, as we must upon established principles of the law of servitudes, the validity of the propositions that a noise can be a nuisance; that a nuisance can give rise to an easement; and that a noise coming straight down from above one's land can ripen into a taking if it is persistent enough and aggravated enough, *then logically the same kind and degree of interference with the use and enjoyment of one's land can also be a taking even though the noise vector may come from some direction other than the perpendicular.*

*Thornburg,* 376 P.2d at 106 (emphasis added).

Our reliance upon the reasoning of the Oregon Supreme Court, and our rejection of the defendant's contention that there must be direct physical invasion of the land, leads

---

**2.** *See* 6A J. Sackman, NICHOLS, THE LAW OF EMINENT DOMAIN § 36.04 (rev. 3d ed. 1994

[hereinafter cited as "NICHOLS ON EMINENT DOMAIN § ___].

to the conclusion that the holding of *Johnson* is not limited to cases of direct overflight.

Moreover, even if our reliance had been less explicit, modern concepts of property ownership, inverse condemnation jurisprudence, and simple logic support the view that direct overflight is not required. Obviously, continuous noise, pollutants, and vibration from planes flying nearby can interfere with a property owner's beneficial use and enjoyment just as surely as noise, pollutants, and vibration from planes flying directly overhead. Of course, the extent of the interference is relevant to determine whether an actual taking has occurred, but there is simply nothing logical about denying or allowing recovery to a landowner solely on the basis of "whether the wing tip of the aircraft passes through some fraction of an inch of the airspace directly above the plaintiff's land." *See Long v. City of Charlotte,* 306 N.C. 187, 293 S.E.2d 101, 109 (1982). *Martin v. Port of Seattle,* 64 Wash.2d 309, 391 P.2d 540, 545 (1964), *cert. denied,* 379 U.S. 989, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965).

Accordingly, we adopt the view expressed in many jurisdictions that an allegation of direct overflight is not required to establish a prima facie cause of action for inverse condemnation. *See Alevizos v. Metropolitan Airports Commission of Minneapolis and St. Paul,* 298 Minn. 471, 216 N.W.2d 651 (1974); *Long, supra; Henthorn v. Oklahoma City,* 453 P.2d 1013 (Okla.1969); *Thornburg, supra; Martin, supra; Aaron v. City of Los Angeles,* 40 Cal.App.3d 471, 115 Cal.Rptr. 162 (1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 806, 42 L.Ed.2d 822 (1975); *City of Philadelphia v. Keyser,* 45 Pa.Cmwlth. 271, 407 A.2d 55 (1979);[3] *see also Sundell v. Town of New London,* 119 N.H. 839, 409 A.2d 1315 (1979) (criticizing the holding of *Ferguson v. City of Keene,* 108 N.H. 409, 238

A.2d 1 (1968) that a direct physical invasion by direct overflight is required); *But see Louisville and Jefferson County Air Bd. v. Porter,* 397 S.W.2d 146 (Ky.1965).

## STANDARD FOR TAKING

Concluding that an allegation of direct overflight is not required does not end the inquiry. We must further delineate the standard that is required to be applied by juries in determining whether a compensable taking has occurred.

In the context of airport cases, the Oregon Supreme Court followed up its 1963 decision in *Thornburg* by specifically dealing with that issue, concluding that

> [t]he proper test to determine whether there has been a compensable invasion of the individual's property rights in a case of this kind is whether the interference with use and enjoyment is sufficiently direct, sufficiently peculiar, and of sufficient magnitude to support a conclusion that the interference has reduced the fair market value of the plaintiff's land by a sum certain in money. If so, justice as between the state and the citizen requires the burden imposed to be borne by the public and not by the individual alone.

*Thornburg v. Port of Portland,* 244 Or. 69, 415 P.2d 750, 752 (1966) (citing *Batten,* 306 F.2d at 587 (Murrah, C.J., dissenting)).

The proper test was characterized by the Minnesota Supreme Court as one which would

> give relief to any property owner who can show a direct and substantial invasion of his property rights of such a magnitude he is deprived of the practical enjoyment of the property and that such invasion results in a definite and measurable diminution of the market value of the property.

*Alevizos,* 216 N.W.2d at 662. The Minnesota Court noted that to justify an award of compensation the invasion of property rights must be of more than an occasional nature;

---

**3.** We note in this regard that the constitutions of twenty-six states require compensation for "damaging" property as well as "taking" property. *Long,* 293 S.E.2d at 107 n. 5. Moreover, some of the Courts which have allowed damages to landowners in the absence of direct overflight over their land, have noted that their state constitution allows compensation for "damaging"

property. *See Aaron,* 115 Cal.Rptr. at 172 and *Martin,* 391 P.2d at 546. We believe that the absence of the "damaging" language in our state constitutional provision does not change the result here. *See Thornburg, supra,* (allowing compensation under a constitutional provision identical to Tennessee's).

the invasions must be repeated and aggravated. *Id.*

 After reviewing our prior decisions and the above authorities, which we find persuasive, we hold that to establish a prima facie cause of action for inverse condemnation, a plaintiff must allege a direct and substantial interference with the beneficial use and enjoyment of the property at issue.[4] The interference must be repeated and not just occasional. Moreover, the interference must peculiarly affect the property at issue and result in a loss of market value. In other words, the interference must be greater than, or different from, that suffered by the general public as a whole. If the elements of the cause of action are alleged and proven, the public, and not the individual, properly assumes the burden of the cost of improvements that benefit the general public.

### CONCLUSION

Applying the above-stated principles to the facts as alleged in the complaint, we conclude that the Court of Appeals erred in affirming the trial court's dismissal of the plaintiff's complaint for failure to state a cause of action for inverse condemnation. Accordingly, the judgment of the Court of Appeals is reversed and this cause is remanded to the trial court for proceedings consistent with this opinion. Costs of the appeal are taxed to the defendant, Metropolitan Knoxville Airport Authority.

DROWOTA, REID, BIRCH and WHITE, JJ., concur.

---

4. It is recognized that the Federal Aviation Administration has prescribed regulations setting forth the minimum safe altitude of flight. They generally provide that the minimum safe altitude is 1,000 feet above the highest obstacle in "congested areas" and 500 feet above the ground level is all other areas. NICHOLS ON EMINENT DOMAIN, supra note 2, § 36.07[4][a]; 14 C.F.R. ch. 1, § 91.119. "Navigable airspace" has been defined by Congress as "airspace above the minimum altitudes of flight prescribed by regulations ... including airspace needed to ensure safety in the take-off and landing of aircraft." 49 U.S.C. § 40102(a)(30) (1995). While it is clear that a "taking" can occur, even if the flights occur only in the navigable airspace, *Griggs, supra,* some courts have used this regulatory scheme as an aid in determining whether compensation is due landowners. NICHOLS ON EMINENT DOMAIN, *supra,* note 2, § 36.07[4]. We agree that whether the flight is within the navigable airspace as defined by the Congress and the Federal Aviation Administration is not determinative on the issue of whether a "taking" has occurred.