IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
SEPTEMBER 16, 2008 Session

**EXPRESS DISPOSAL, LLC v. CITY OF MEMPHIS**

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-000558-07     Donna M. Fields, Judge**

**No. W2007-02081-COA-R3-CV - Filed December 29, 2008**

In this appeal, we are asked to determine whether Express Disposal had a legal, vested right to conduct its garbage collection business for residences in Berryhill prior to its annexation by the city of Memphis, such that Memphis' exercise of its exclusive right to provide municipal services in Berryhill constituted a taking of Express Disposal's property rights without just compensation in violation of Article I, section 21 of the Tennessee Constitution. We find that Memphis' takeover of residential garbage collection in Berryhill did not amount to a constitutional taking, such that Express Disposal was entitled to compensation. Thus, we affirm the circuit court's dismissal of Express Disposal's claim for failure to state a claim upon which relief could be granted.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

R. Layne Holley, Justin K. Thomas, Germantown, TN, for Appellant

Jonathan C. Hancock, Ross E. Webster, Memphis, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

On November 4, 1996, the Memphis City Council annexed the Berryhill area pursuant to an annexation ordinance. Opponents of the annexation filed a *quo warranto* action challenging the reasonableness of such annexation; however, the lawsuit was ultimately resolved following trial with the entry of a Consent Final Judgment on September 9, 2005. An effective date of January 1, 2007 was established for the annexation of Berryhill by the City of Memphis ("Memphis").

Express Disposal, LLC ("Express Disposal") is a garbage collection business that provided such services to Berryhill from 2005 until December 31, 2006. On October 23, 2006, Memphis sent a letter notifying Express Disposal that Memphis would begin providing garbage collection services to Berryhill residents on January 1, 2007.

Prior to annexation, Memphis entered into a contract with BFI Waste Services, LLC, now known as Allied Waste Services ("Allied"), in which Allied would provide services, including garbage collection, to certain areas within Memphis' city limits. Additionally, Memphis reserved the right to require Allied to service any annexed areas for a negotiated fee. Thus, on January 1, 2007, Memphis exercised its exclusive right under Tennessee Code Annotated section 6-51-111,[1] as well as its contractual right with Allied, and extended garbage collection service to Berryhill.[2]

On January 30, 2007, Express Disposal filed a Complaint against Memphis in the Shelby County Circuit Court.[3] According to the Complaint, City of Memphis Ordinance § 9-56-3 makes it "unlawful for Express Disposal and all other garbage haulers to conduct *residential* garbage collection business in newly annexed areas of Memphis."[4] (emphasis added). Express Disposal

---

[1] Tenn. Code Annotated section 6-51-111 provides, in part, that "[t]he annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal utility functions and services in any territory that it annexes, notwithstanding § 7-82-301 or any other statute, subject, however, to the provisions of this section with respect to electric cooperatives." Express Disposal does not challenge Memphis' authority to provide garbage collection services in Berryhill.

[2] According to Memphis, Allied would provide garbage collection services to Berryhill residents on a temporary basis, with Memphis ultimately providing the service.

[3] Express Disposal originally named Willie W. Herenton, Mayor of Memphis, as a defendant; however, he was voluntarily dismissed without prejudice on April 2, 2007.

[4] City of Memphis Ordinance section 9-56-3 provides that "[i]t is unlawful for any person other than the city to engage in the business of collecting, removing, and disposing of solid waste in the city, except those private collectors specifically authorized by permit." City of Memphis Ordinance section 9-56-4 grants the director of the public works division jurisdiction over solid waste, and section 9-56-24(A), (E) further provides that such director may "not authorize the private collection of solid waste from: (i) single-family, duplex, triplex, quadruplex residence and boarding houses on dedicated city streets; or (ii) mobile homes . . . . [except] [w]hen private collection services are considered to be in the public interest." "Private collection services are considered in the public interest if the director determines that the structural dimensions, turn radiuses, and load capacities of any property does not permit public collection services. . .
(continued...)

argued that, "[b]ased on rates of customer retention for the garbage collections services performed for pay in the industry and by Express Disposal, it had a reasonable expectation that its customers would continue to retain and pay Express Disposal to pick up their garbage for many years." This "foreclosure" of services, Express Disposal claimed, "constitute[d] an unconstitutional taking of its property and property rights without just and fair compensation in violation of Article I, § 21of the Tennessee Constitution." Based on its implied contracts with 135 customers, Express Disposal claimed a loss of $267,300, representing approximately ten years of lost revenue in Berryhill.

On March 2, 2007, Memphis moved for a dismissal pursuant to Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief could be granted. Following a hearing on April 13, 2007, the trial court entered an Order, on August 15, 2007, granting Memphis' Motion to Dismiss. The trial court found that Express Disposal's Complaint failed to state a claim upon which relief could be granted, as it failed "to establish a property right subject to an unconstitutional taking in violation of the Tennessee Constitution." The trial court found that no property right existed because: (1) Memphis had the exclusive right to provide municipal services within its municipal borders; (2) Memphis' City Ordinances allowed Express Disposal to obtain a permit for solid waste collection in certain areas within Memphis' city limits, including private roads and communities and commercial businesses; (3) a reduced ability to operate in a certain area does not amount to a compensable taking; and (4) Express Disposal did not allege Memphis took physical possession of written contracts with customers or any other tangible property. Furthermore, the court stated that "Express Disposal began servicing Berryhill residents . . . [with] either actual or constructive knowledge of the pending annexation and the City's Plan of Services for solid waste collection once the annexation became effective. Thus, Express Disposal chose to operate its business in the area in 2005 and 2006 at its own peril." It is from this Order which Express Disposal now appeals.

## II. ISSUES PRESENTED

Appellant has timely filed its notice of appeal and presents the following issues for review, restated below:[5]

1.      Whether Express Disposal had a legal, vested right to conduct its business in Berryhill prior to annexation by Memphis; and

2.      Whether Memphis' annexation of Berryhill represented an unconstitutional "taking" of Express Disposal's property–its legal vested right to conduct its business–without just compensation, in violation of Article I, section 21 of the Tennessee Constitution.

---

[4](...continued)
. [or] for economic reasons[.]"


[5]Although Memphis' Brief enumerates three issues for our review, we find that each is encompassed within the two issues presented by Express Disposal.

Additionally, Appellee presents the following issue for review:

3.      Whether the trial court correctly dismissed Disposal's Complaint pursuant to Tennessee Rule of Civil Procedure 12.02(6) for failure to state a claim upon which relief could have been granted because Memphis has the exclusive right to provide municipal services such as garbage collection to all areas within its municipal borders.

For the following reasons, we affirm the decision of the circuit court.


### III.   STANDARD OF REVIEW

The determination of whether the trial court erred in ruling on a motion to dismiss for failure to state a claim upon which relief could be granted is a question of law. ***Doe v. Catholic Bishop for Diocese of Memphis***, No. W2007-01575-COA-R9-CV, 2008 WL 4253628, at \*3 (Tenn. Ct. App. Sept. 16, 2008) (citing *Farris v. Todd*, No. E1999-01574-COA-R3-CV, 2000 WL 528408, at \*2 (Tenn. Ct. App. May 3, 2000)). Thus, this Court must review the trial court's ruling on a Rule 12.02(6) motion to dismiss de novo with no presumption of correctness. ***Id.*** (citing *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997)). "'[W]e must construe the [plaintiff's] complaint liberally in favor of the plaintiff, taking all of the allegations of fact therein as true[,]'" ***Id.*** (quoting *Randolph v. Dominion Bank of Middle Tenn.*, 826 S.W.2d 477, 478 (Tenn. Ct. App. 1991)), as "[a] motion to dismiss for failure to state a claim for which relief can be granted 'tests only the legal sufficiency of the complaint[.]'" ***Id.*** (quoting *Stein*, 945 S.W.2d at 716 (Tenn. 1997)).


### IV.   DISCUSSION

#### A.   Taking Without Compensation

On appeal, Express Disposal acknowledges that Memphis has the exclusive right to provide garbage collection services pursuant to Tennessee Code Annotated section 6-51-111; however, it contends that Memphis must provide compensation for "taking" its customers and contracts, and for preventing Express Disposal from providing its services to residential customers.

Article I, section 21 of the Tennessee Constitution provides that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." **Tenn. Const. art. I, § 21.** "This particular constitutional provision recognizes the governmental right of eminent domain, which is the power to take private property without the consent of the owner, but it limits that right by entirely prohibiting the taking of private property for private purposes, and by requiring just compensation when private property is taken for public use." ***Jackson v. Metro. Knoxville Airport Auth.***, 922 S.W.2d 860, 861 (Tenn. 1996) (citing *S. Ry. Co. v. City of Memphis*, 148 S.W. 662 (Tenn. 1912); *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74 (1980)). Our General Assembly has implemented Article I, section 21's provision by passing eminent domain and inverse condemnation

statutes. ***Edwards v. Hallsdale-Powell Util. Dist. Knox County, Tenn.***, 115 S.W.3d 461, 464 (Tenn. 2003) (citing Tenn. Code Ann. §§ 29-16-101 to -127, 29-17-101 to -[6]02).

"Eminent domain" refers to a proceeding initiated by the government to obtain property through condemnation, ***Jackson***, 922 S.W.2d at 861, while, "'[i]nverse condemnation' is the popular description of a cause of action against a governmental defendant to recover the value of the property which has been taken in fact by a governmental defendant even though no final exercise of the power of eminent domain has been attempted by the government." ***Johnson v. City of Greeneville***, 435 S.W.2d 476, 478 (Tenn. 1968) (citations omitted). Because Express Disposal seeks compensation for a governmental "taking" although Memphis has instituted no eminent domain proceedings, we classify Express Disposal's cause of action as one for inverse condemnation.

Our Supreme Court has recognized that "[n]ot every destruction or injury to property by governmental action constitutes a 'taking' in the constitutional sense." ***Jackson***, 922 S.W.2d at 862 (citing *PruneYard Shopping Ctr.,* 447 U.S. 74). Instead, "Tennessee courts have recognized two classifications of takings: physical occupation takings and nuisance-type takings."[6] ***Edwards***, 115 S.W.3d at 465 (citing *Jackson*, 922 S.W.2d at 862-63).

A physical occupation taking occurs when the government "causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights." ***Id.*** (citing *Ill. Cent. R.R. Co. v. Moriarity*, 186 S.W. 1053 (Tenn. 1916); *Barron v. City of Memphis*, 80 S.W. 832 (Tenn. 1904)). A "direct and physical invasion" constitutes a taking when "real property is either actually appropriated or the common and necessary use of the property is rendered impossible or seriously interrupted." ***Id.*** (citing *Jackson*, 922 S.W.2d at 862; *Barron*, 80 S.W. at 823-33). The destruction of a plaintiff's property rights rises to a taking "when there is a diminution in the value of real property peculiarly affected and directly invaded that is not shared by the public at large." ***Id.*** (citing *Jackson*, 922 S.W.2d at 862; *Moriarity*, 186 S.W. at 1054).

Nuisance-type takings occur "when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property." ***Edwards***, 115 S.W.3d at 465 (citing *Jackson*, 922 S.W.2d at 862; *Johnson*, 435 S.W.2d at 480). To recover compensation under a nuisance-type taking,

> the plaintiff must allege a direct and substantial interference with the beneficial use and enjoyment of the property; this interference must be repeated and not just occasional; the interference must peculiarly affect the property in a manner different than the effect of the

---

[6] "The Tennessee Supreme Court has not yet applied the takings clause of the Tennessee Constitution to zoning or land use regulations." ***Consol. Waste Sys., LLC v. Metro. Gov't of Nashville & Davidson County***, No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *11 (Tenn. Ct. App. June 30, 2005).

> interference to the public at large; and the interference must result in
> a loss of market value.

*Id.* (citing *Jackson*, 922 S.W.2d at 865). We do not find that Express Disposal's inverse condemnation claim qualifies as either a physical occupation or nuisance-type taking.

In support of its contention that the "taking" of its ability to service residences in Berryhill "does not differ in any manner from eminent domain wherein a highway is built on or through a person's property[,]" Express Disposal cites two Tennessee cases. We do not find these cases demonstrate a right in Tennessee to receive just compensation for a "taking" of the ability to conduct business in a certain area.

First, Express Disposal cites *Duck River Electric Membership Corporation v. City of Manchester*, 529 S.W.2d 202 (Tenn. 1975). In *Duck River*, the city of Manchester sought to condemn the property of a public non-profit electric membership corporation, which supplied electricity to the city's residents, in order that the city could take over supplying electricity. ***Duck River Elec. Membership Corp.***, 529 S.W.2d at 204. Express Disposal contends that our Supreme Court, in *Duck River*, held that although the city had the exclusive power to control utilities–thus, allowing the city to exercise eminent domain–the city was required to "pay just compensation to those utility providers that were prevented from operating in the area pursuant to Article I, § 21 of the Tennessee Constitution." However, we find Appellant's reliance on *Duck River* misplaced. While our Supreme Court held that the displaced utility provider was entitled to just compensation, such payment was to compensate for the loss of the utility's real property as well as its "personal property including poles, conductors, anchors, guy wires, lightning arresters, transformers, street lights, and numerous other items of equipment used in an electrical distribution system." *Id.* at 207.[7] Thus, *Duck River* did not allow just compensation for any taken intangible "property" rights.

Express Disposal also relies on *Forked Deer Electric Cooperative, Inc. v. City of Ripley*, 883 S.W.2d 582 (Tenn. 1994) in support of its claim for compensation for its lost ability to service residential customers in Berryhill. Again, we find Express Disposal's reliance unfounded. In *Forked Deer*, the Forked Deer Electric Cooperative ("Forked Deer") lost at least a portion of its existing customer base when the town of Halls awarded to another cooperative, an exclusive franchise to deliver power within the town's city limits. ***Forked Deer Elec. Coop., Inc. v. City of Ripley***, 883 S.W.2d at 583. Forked Deer sued alleging inverse condemnation, and the United States District

---

[7] "Reference to the general condemnation statutes [Tennessee Code Annotated section 29-16-101, et seq., formerly Tennessee Code Annotated section 23-1401, et seq.] will reveal that they contemplate only the condemnation of land. No reference is made to personal property and yet the constitutional prohibitions against taking private property without just compensation appl[y] with full force and validity to personal property." ***Duck River Elec. Membership Corp.***, 529 S.W.2d at 207 (citing *Zirkle v. City of Kingston*, 396 S.W.2d 356 (Tenn. 1965)).

Court for the Western District of Tennessee found that the exclusive franchise had "'taken away Forked Deer's right to serve its members without formal condemnation proceeding[s],'[and that] such action was in the nature of an inverse condemnation, and therefore constituted a taking under the Fifth Amendment [of the United States Constitution]." *Id.* at 584. However, the only issue certified to our Supreme Court was the calculation of the compensation formula. *Id.* at 583.

We find several reasons why *Forked Deer* lacks precedential value in this case. First, *Forked Deer* involved a taking without just compensation under the Fifth Amendment to the United States Constitution, rather than Article I, section 21 of the Tennessee Constitution. Second, our Supreme Court, in *Forked Deer*, did not find that Forked Deer's lost right to service its customers constituted a "taking," but instead only answered the question certified to it concerning calculation of compensation. Finally, Tennessee Code Annotated section 6-51-112(a) requires that compensation be paid to electric cooperatives whose property and service rights are "taken" through annexation;[8] however, our State's statutes afford no similar protection to displaced garbage collectors.

Based on the foregoing authority, we find no support for Express Disposal's contention that Memphis' appropriation of garbage collection services for Berryhill residences constituted a taking, such that just compensation is required. Thus, we affirm the dismissal of Express Disposal's Complaint for failure to state a claim upon which relief could be granted and deem all other issues pretermitted.

## V.  CONCLUSION

---

[8] Tennessee Code Annotated section 6-51-111 provides that an "annexing municipality, if and to the extent that it may choose, shall have the exclusive right to perform or provide municipal and utility functions and services in any territory that it annexes, notwithstanding § 7-82-301 or any other statute, subject, however to the provisions of this section *with respect to electric cooperatives*." (emphasis added). Tennessee Code Annotated section 6-51-112(a) further provides, in relevant part:

> Notwithstanding the provisions of any other statute, if the annexing municipality owns and operates its own electric system, it shall either offer to purchase any electric distribution properties and service rights within the annexed area owned by any electric cooperative, or grant such cooperative a franchise to serve the annexed area, as hereinafter provided:
>
> (1) The municipality shall notify the affected electric cooperative in writing of the boundaries of the annexed area and shall indicate such area on appropriate maps;
>
> (2) The municipality shall offer to purchase the electric distribution properties of the cooperative located within the annexed area, together with all the cooperative's rights to serve within such area, for a cash consideration . . . .

For the aforementioned reasons, we affirm the decision of the circuit court.  Costs of this appeal are taxed to Appellant, Express Disposal, and its surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.