IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2009 Session

# H.P. LARGE, and TERRANCE R. CRAIG, d/b/a GREENFIELD LAND AND CATTLE COMPANY, v. GREENE COUNTY, TENNESSEE

**Direct Appeal from the Circuit Court for Greene County**
**No. 05CV754     Hon. Thomas J. Wright, Judge**

_____

**No. E2008-02764-COA-R3-CV - FILED DECEMBER 28, 2009**

_____

Plaintiffs alleged that defendant had constructed a bridge over Lick Creek which was adjacent to their property, and the bridge had caused their property to repeatedly flood. They further alleged that they were entitled to recover damages under the theory that the County maintained a temporary nuisance which damaged their property. Defendant filed a Motion for judgment on the pleadings which characterized plaintiffs' cause of action as an inverse condemnation action. Affidavits and other documents were filed in the record and the Trial Court agreed with the defendant that plaintiffs' action was based on inverse condemnation and the statute had run on that action. The Trial Judge also ruled that the statute had run on the nuisance claim. On appeal, we affirm the Trial Judge's holding that plaintiffs' action was a nuisance type taking and was governed by the inverse condemnation statute, and we agree that the record demonstrates that the statute of limitations had run on plaintiffs' claims.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, J., joined. Judge CHARLES D. SUSANO, JR., dissented and filed an opinion.

James D. Culp, Johnson City, Tennessee, for appellants.

Roger A. Woolsey, Greeneville, Tennessee, for appellee.

**OPINION**

Plaintiffs/appellants are landowners in Greene County Tennessee. The properties are adjacent to Lick Creek, and they engage in farming operations on their land.

Plaintiffs filed suit against Greene County, Tennessee, alleging that defects in a bridge constructed and owned by Greene County caused Lick Creek to flood their property. Plaintiffs alleged that the bridge at issue was built to replace an older bridge and that it was not built according to design plans and specifications that had been approved by the Department of the Army Corps of Engineers. They further alleged that these defects caused the bridge to act as a dam which resulted in flooding of Lick Creek over plaintiffs' fam land from time to time, which resulted in damage to their property and caused the lands to be devalued. The complaint characterized the flooding caused by the defects in the bridge as a "continuing" nuisance. Plaintiffs asked that the bridge be declared a nuisance and that Greene County be ordered to take action to abate the nuisance. Alternatively, plaintiffs asked for monetary compensation for the devaluation of their land and their loss of annual income from the land. The complaint did not provide the date of the construction of the bridge nor does it provide the dates of the alleged flooding of plaintiffs' land. The parties agreed at the hearing on the motion to dismiss that the bridge construction was completed in 1997.

Greene County answered the complaint and raised the affirmative defense that the action was barred by the applicable one year statute of limitations set forth in Tenn. Code Ann. § 29-16-124 and § 29-30-305.

The defendant then filed a motion for judgment on the pleadings, along with the affidavits of Mr. Large and Mr. Craig. Large's affidavit identifies his parcel of land at issue and states that his property has been flooded on several occasions per year since the completion of the bridge and that the flooding has "greatly interfered with [his] ability to utilize [his] property". Large concluded in the affidavit that "the flooding of Lick Creek onto [his] property is now a recurring problem, involving several such episodes in a typical year. Each flooding episode constitutes a fresh interference with the use of [his] land, and, in [his] opinion a new nuisance." A copy of a letter to Mr. Large from Azimuth Engineering, Inc., dated June 21, 2000, was attached to the affidavit. Large asserted that "[i]t is plain from the text of that letter that the bridge was not constructed as specified in the permit, and that it serves as an impediment to the flow of water on Lick Creek." The affidavit is dated July 22, 2004 and did not provide the date of construction of the bridge or any dates of the alleged flooding.

Craig's affidavit similarly contains a description of his property at issue and states that his property has flooded several times per years since construction of the bridge, and attached to his affidavit are two letters from the Tennessee Department of Transportation, dated March 10, 2004 and May 20, 2003, which state that the bridge was not built as designed. The Craig affidavit is also dated July 22, 2004. The motion for judgment on the pleadings filed by Green County states that with state assistance, the County undertook to replace the Link Creek bridge in 1996 and the bridge was completed in 1997, and on November 7, 1997, the Tennessee Department of Transportation, certified that the bridge was constructed according to project plans. Further, that an

2

inspection found that the bridge substantially complied with the project plans and specifications. The County asserted that while plaintiffs characterized their cause of action as a nuisance action, it was in fact an inverse condemnation action, pursuant to Tenn. Code Ann. § 29-16-124, and that plaintiffs were time barred from bringing the suit eight years after the bridge was completed. Further, defendant argues that the Governmental Tort Liability Act (GTLA) provides that any action brought against a governmental entity must be commenced within twelve months after the cause arises.  Tenn. Code Ann. § 29-20-305.

A hearing was held on the Motion on October 10, 2008 before the Trial Court.  The parties agreed there were no facts in dispute for purposes of the motion.

The Trial Court raised the issue of whether the matter should be treated as a motion for summary judgment rather than a motion for judgment on the pleadings as plaintiffs' affidavits and several documents attached to the affidavits and to defendant's memorandum in support of the motion were submitted for consideration by the Court.  While the written judgment states that defendant's motion for  judgment on the pleadings was sustained, the judgment also states that "the record as a whole, and statements of Counsel" were reviewed by the Court.

The Trial Court observed that the bridge was permanent in nature and that flooding caused by the bridge were likewise permanent with regard to a nuisance claim.  The Court held that plaintiffs were subject to a three year statute of limitations and that the bridge was constructed more than three years prior to the filing of the suit. Alternatively, the Court said that a "more factually intense analysis" would reveal that a taking had occurred because plaintiffs were "effectively deprived" of the use of their property and that the statute of limitations for an inverse condemnation suit was one year, and that the suit would also be time barred on that basis.

On appeal, plaintiffs raise two issues:

A.      Whether the Trial Court was correct in finding that plaintiffs' cause of action was for adverse condemnation?

B.      Whether the Trial Court was correct in finding that plaintiffs' cause of action was for permanent nuisance rather than temporary nuisance?

The Trial Court considered the affidavits and other documents in reaching its decision, and in effect granted summary judgment in favor of Greene County.  When considering a motion to dismiss brought pursuant to Tenn. R. Civ. P. 12.02(6), matters outside the pleadings are not to be considered. *Trau-Med of America, Inc. v. Allstate Ins. Co.,* 71 S.W.3d 691, 696 (Tenn. 2002).  If a trial court does consider materials outside the pleadings, then Rule 12.02  provides that the motion to dismiss "shall be treated as one for summary judgment and disposed of as provided in Rule 56."  As the Trial Court considered materials outside the pleadings, we hold that the Trial Court's Judgment was a summary judgment and we will review it on that basis.

Summary judgment is awarded when the moving party can demonstrate that there are

no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tenn R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn. 1993). Our review of a factual record after a trial court grants summary judgment requires us to view the facts in the light most favorable to the nonmoving party. *Byrd v. Hall*.

The plaintiffs, on appeal, insist the action is founded in nuisance, and rely on the holding of *Kind v. Johnson City*, 478 S. W. 2d 63 (Tenn. Ct. App. 1970), and assert that the statute of limitations began to run anew after each flooding incident. In *Kind* Johnson City had made improvements to a drainage system in the vicinity of plaintiffs' property which caused their property to flood from time to time. The Court of Appeals held that the wrongful interference with the natural drainage of surface water that caused injury to an adjoining landowner's property constituted an actionable nuisance, *Kind* at 65; and that a municipality is liable if it creates a nuisance even in pursuing a public work project. Because the court found that the nuisance created and maintained by Johnson City was temporary and continuous in character it held that "the very continuation of the nuisance is a new offense entitling complainants' to recover damages accruing within the statutory period next preceding the suit, although more than the statutory period has elapsed since the creation of the nuisance." *Kind* at 66.

The Trial Court held that as the replacement bridge at issue was permanent in nature as was the flooding caused by the bridge, and that plaintiffs' nuisance claims were based on a permanent nuisance which had a three year statute of limitation. Therefore the statute of limitations for permanent nuisance would bar the plaintiffs from going forward with this case. The Court alternatively held that there was a taking of plaintiffs' property and that the case was for inverse condemnation, which had a one year statute of limitations and which had clearly run by the time the case was filed. The Court did not address Greene County's contention that any claims sounding in nuisance would have to be brought pursuant to the Governmental Tort Liability Act, which provides for a one year statute of limitation.

On appeal, plaintiffs contend that the Trial Court erred in characterizing their claim against Greene County as a claim for inverse condemnation. The Tennessee Supreme Court, in *Edwards v. Hallsdale-Powell Utility Dist. Knox County*, 115 S.W.3d 461 (Tenn. 2003) explained the concepts of eminent domain and inverse condemnation in detail as follows:

> The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use. *See Jackson v. Metro. Knoxville Airport Auth.,* 922 S.W.2d 860, 861 (Tenn.1996). The Tennessee General Assembly has implemented this provision by its passage of eminent domain and inverse condemnation statutes. *See* Tenn .Code Ann. §§ 29-16-101 to 29-16-127 (2000 & Supp.2002); 29-17-101 to 29-17-1202 (2000).

4

"Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted. *See Johnson v. City of Greeneville,* 222 Tenn. 260, 435 S.W.2d 476, 478 (1968). A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vradenburg,* 545 S.W.2d 733 735 (Tenn.1977). Not every destruction or injury to property caused by governmental action, however, constitutes a taking under article I, section 21 of the Tennessee Constitution. *See Jackson,* 922 S.W.2d at 862 (citing *PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980)). Tennessee courts have recognized two classifications of takings: physical occupation takings and nuisance-type takings. *See id.* at 862-63.

Physical occupation takings arise when a governmental defendant causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights. *See generally Ill. Cent. R.R. Co. v. Moriarity,* 135 Tenn. 446, 186 S.W. 1053 (1916); *Barron v. City of Memphis,* 113 Tenn. 89, 80 S.W. 832 (1904). The construction of a permanent improvement by a governmental defendant that diverts water from a stream onto private property and causes flooding is an example of a direct and continuing physical invasion of real property. *See Barron,* 80 S.W. at 832-33; *see also Jackson,* 922 S.W.2d at 862. We have held that such direct and physical invasions constitute a governmental taking when real property is either actually appropriated or the common and necessary use of the property is rendered impossible or seriously interrupted *See Barron,* 80 S.W. at 832-33; *see also Jackson,* 922 S.W.2d at 862. Physical occupation takings may also arise when a governmental defendant causes a destruction of a plaintiff's property rights. The destruction of the easement of access to and from a plaintiff's home by the closing of a street is an example of a destruction of a property right. *See Moriarity,* 186 S.W. at 1053-54; *see also Jackson,* 922 S.W.2d at 862. This type of physical occupation constitutes a taking when there is a diminution in the value of real property peculiarly affected and directly invaded that is not shared by the public at large. *See Moriarity,* 186 S.W. at 1054; *see also Jackson,* 922 S.W.2d at 862.

Tennessee courts also recognize nuisance-type takings. *See, e.g., Jackson,* 922 S.W.2d at 862; *Johnson,* 435 S.W.2d at 480. Such a taking occurs when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property. *See Jackson,* 922 S.W.2d at 862; *Johnson,* 435 S.W.2d at 480. For example, this Court has held that a government's extension of a runway that results in noise, vibration, and pollutants from airplanes flying at low altitudes to the detriment of nearby private property may be a taking. *Jackson,* 922 S.W.2d at 861, 863-64. In *Jackson,* we established the standard for determining whether a nuisance-

5

type taking has occurred: the plaintiff must allege a direct and substantial interference with the beneficial use and enjoyment of the property; this interference must be repeated and not just occasional; the interference must peculiarly affect the property in a manner different than the effect of the interference to the public at large; and the interference must result in a loss of market value. *Id.* at 865.

*Edwards* at 464 - 465.

Based on the above discussion, the plaintiffs' alleged loss of use of part of their properties due to the construction of the bridge is classified as a nuisance-type taking as plaintiffs allege a direct and substantial interference with the beneficial use and enjoyment of the property because of the flooding. The flooding was alleged to be repeated and not just occasional, and the flooding peculiarly affected their property as they could not farm or keep livestock on the parts of the property that flooded and the flooding was alleged to have resulted in a loss of market value of their property. Thus, plaintiffs' complaint set forth a *prima facie* case for inverse conversion of the nuisance-type. *Jackson,* 922 S.W.2d at 865; *see also Peterson v. Putnam County*, No. M2005-02222-COA-R3-CV, 2006 WL 3007516 at * 4 (Tenn. Ct. App. Oct. 19, 2006). We conclude the Trial Court did not err when it characterized the cause of action as inverse condemnation.

The inverse condemnation statute, Tennessee Code Annotated Section 29-16-124, requires landowners to "commence proceedings within twelve (12) months after the land has been actually taken possession of and the work of the proposed internal improvement begun." Under the statute, the triggering event for the running of the statute is the landowner's knowledge of the entry onto the land or the beginning of the improvement affecting the land and its use. *STS/BAC Joint Venture v. City of Mt. Juliet*, No. M2003-00171-COA-R3-CV, 2004 WL 2752809 at * 8 - 9 (Tenn. Ct. App. Dec. 1, 2004). The affidavits of plaintiffs, which were signed in July 2004, stated the flooding had occurred "for several years, since the completion of the . . . bridge" and it is undisputed that the bridge was completed in 1997. Therefore, plaintiffs were on notice of the flooding several years prior to executing the affidavits and the Complaint was not filed until October 12, 2005. The Trial Court did not err when it found that the claim for inverse condemnation was time barred pursuant to the one year statute of limitations.

Further, plaintiffs contend on appeal that the Trial Court should have found that the alleged common-law nuisance of flooding caused by the bridge was a temporary and continuous nuisance rather than a permanent nuisance. The permanent nuisance is subject to the three year statute of limitations and would have begun to run at the time of completion of the bridge, in 1997. *Russell v. Howard*. On the other hand, if the flooding was found to be a temporary and continuing nuisance each incidence of flooding would be considered a new offense and the statute of limitations would begin to run anew at the time of each occurrence. *Kind v. Johnson City.*

Greene County responds that although plaintiffs framed their cause of action as a temporary nuisance case, the Trial Court correctly characterized it as an inverse condemnation where the one year statute of limitations is applicable. Alternatively, Greene County contends that any

6

claim for nuisance, whether permanent or temporary, brought against it must be brought pursuant to the Governmental Tort Immunity Act, Tenn. Code Ann. § 29-20-204, which has a statute of limitations of one year. Tenn. Code Ann. § 29-20-305.

This Court recently considered the issue of whether a plaintiff's proper cause of action was a claim for inverse condemnation, rather than a temporary nuisance claim in *Peterson v. Putnam County* No. M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. Oct. 19, 2006) as follows:

> The first issue with respect to the plaintiffs' common law nuisance claim- *i.e.,* whether the plaintiffs' proper cause of action was a claim for inverse condemnation, rather than a temporary nuisance claim-has been addressed by the courts of this State on numerous occasions. A nuisance has been defined as "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." *Pate v. City of Martin,* 614 S.W.2d 46, 47 (Tenn.1981). A temporary nuisance is one that "can be corrected by the expenditure of labor or money." *Id.* at 48. The determination that a "taking has occurred [, as opposed to a nuisance,] depends on the facts of each case, specifically the nature, extent and duration of the intrusion." *Burchfield v. State of Tennessee,* 774 S.W.2d 178, 183 (Tenn. Ct. App.1988). Where the adverse effect amounts to a "taking" of property by the government, the plaintiff's proper remedy is one for inverse condemnation under the eminent domain statutes. *See* T.C.A. § 29-16-123, 124; *see Pleasant View Util. Dist. v. Vrandenburg,* 545 S.W.2d 733 (Tenn.1977); *Monday v. Knox County,* 417 S.W.2d 536 (Tenn.1967); *Smith v. Maury County,* No. 01-A-01-9804-CH-00207, 1999 WL 675135 (Tenn. Ct. App. M.S., filed September 1, 1999).

*Peterson* at * 9.

In *Peterson,* this Court found that under the facts of the case a taking had occurred and that plaintiffs were precluded from recovering on a temporary nuisance claim. In the instant case, we conclude that plaintiffs stated a *prima facie* case of inverse condemnation, thus, as in the holding in *Peterson*, the plaintiffs would be precluded from pursuing their temporary nuisance claim.

Since the finding that the cause of action was for statutory inverse condemnation which precluded plaintiffs from pursuing a cause of action for nuisance, we will not consider whether the Trial Court was correct in finding a permanent nuisance rather than a temporary nuisance.

We affirm the Judgment of the Trial court in finding that plaintiffs' Complaint stated a cause of action for statutory inverse condemnation and in its finding that that action was barred by the statute of limitations. We do not agree with the Trial Court in its finding that the plaintiffs' stated a cause of action for permanent nuisance as they were precluded from bringing a nuisance claim concurrently with the inverse condemnation claim. This error was harmless as the Trial Court dismissed the nuisance claim as well, based on the statute of limitations.

7

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the plaintiffs, H.P. Large and Terrance R. Craig.

_____

HERSCHEL PICKENS FRANKS, P.J.