# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 27, 2012 Session

## DURRETT INVESTMENT COMPANY, LP v. THE CITY OF CLARKSVILLE, TN

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVOD111105    Michael R. Jones, Judge**

---

**No. M2012-00807-COA-R3-CV - Filed February 15, 2013**

---

City enacted an ordinance imposing a temporary moratorium on development of land within a 250 foot corridor abutting land owned by developer. Developer sued City asserting claims for inverse condemnation, wrongful taking, tortious interference with business relationships, and damages pursuant to 42 U.S.C. § 1983; City filed a motion to dismiss for failure to state a claim, which the trial court granted. Developer appeals, contending that the temporary moratorium constituted a taking and that the tortious interference with business relationships and interference with contract rights claims were allowed pursuant to the Tennessee Governmental Tort Liability Act. We affirm the trial court's dismissal of Plaintiff's tort claims and reverse the trial court's dismissal of Plaintiff's inverse condemnation and takings claims.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P. J., M. S., and FRANK G. CLEMENT, JR., J., joined.

Mark Robert Olson, Clarksville, Tennessee, for the appellant, Durrett Investment Company, LP.

James L. Murphy, III, Joel Eckert, and Molly Devlin Loughney, Nashville, Tennessee, for the appellee, City of Clarksville, Tennessee.

**OPINION**

I. Facts and Procedural History[1]

Durrett Investment Co. ("Plaintiff") is the owner of 228 acres of real property in Clarksville; the property was zoned in 2004 for development of multi-family and single family housing. Plaintiff submitted a Master Plan for the development of the property to Clarksville's City Planning Commission for approval on May 6, 2010; the Planning Commission deferred consideration of the plan for thirty days on May 26. On June 14, 2010, the Clarksville City Council voted on first reading to approve an ordinance establishing a moratorium on development and construction on property within a 250' corridor, which abutted the property owned by plaintiff; on June 23, Plaintiff withdrew the Master Plan from the Planning Commission. The Council did not pass the ordinance on second reading on August 5. Plaintiff resubmitted the Master Plan to the Planning Commission on October 7, 2010, and the plan was approved by the Planning Commission on November 23. In the interim, the City Council voted on November 18 to reconsider the ordinance; on December 2, passed the ordinance on second reading. The moratorium on development was to remain in effect until August 8, 2011.[2]

---

[1]  The factual history is derived in part from the Affidavit of Cal McKay, a professional engineer whose affidavit was filed by Plaintiff in opposition to a Motion to Dismiss, and in part from materials filed by the City in support of the motion. The factual history portion of this opinion is provided to give context to the discussion of the issues and has no bearing on the resolution of the issues.

[2]  Ordinance 50-2010-11 is entitled "An Ordinance Establishing a Moratorium Regarding Development and Construction Upon Lands Within the Proposed East-West Corridor", and recited, *inter alia*, that the area between Fort Campbell Boulevard and Wilma Rudolph Boulevard was undergoing rapid development and that a 2006 study commissioned by the City had found "the need for additional roadway to serve the existing and future population" in the area, including "an additional east-west arterial connecting Fort Campbell Boulevard to Trenton Road, Wilma Rudolph Boulevard, and Interstate 24"; the ordinance provided in part:

> 1. That there is hereby established a moratorium, for a period of eight (8) months from the effective date of this Ordinance on any development and/or construction which requires a building or grading permit, plat or site plan approval, construction plan approval, or zoning request, within the area as shown on the attached Exhibit A, which is generally a narrow corridor of two-hundred fifty feet (250') in width.

Attached as Exhibit A is what appears to be a satellite map of the area. The Ordinance prohibited the Clarksville-Montgomery County Regional Planning Commission from accepting applications for, or issuing approval of, any zoning requests, subdivision plats, building permits, grading permits, or construction plans during the eight-month period in the designated area; the Ordinance provided that moratorium did not apply

(continued...)

On May 19, 2011, Plaintiff filed this action, alleging that Plaintiff owned land that was subject to the moratorium and that the moratorium constituted a taking; Plaintiff asserted a claim of inverse condemnation. On August 9, 2011, Plaintiff filed an Amended Complaint, asserting claims for inverse condemnation, tortious interference with business relationships, and damages pursuant to 42 U.S.C. § 1983. On September 9, the City filed a Tenn. R. Civ. P. 12.02(6) Motion to Dismiss; Plaintiff filed its response on November 17. On February 16, 2012, the court rendered an Opinion in which it held in part:

> [T]he subject moratorium was for a valid governmental purpose, the moratorium has expired and has not been extended, the [Plaintiffs] retain the full use of its land as it existed prior to the moratorium, there was no entry into the land as for a traditional taking, and the entire tract of land was not subject to the moratorium.

On March 19, the court entered an Order incorporating the Opinion and dismissing with prejudice all of Plaintiff's claims.

Plaintiff appeals and articulates the following issues:

1. Dismissal for Failure to State a Claim Was in Error.

2. The Moratorium Constitutes a "Taking".

3. Temporary State Actions and Regulations Constitute a Taking.

4. The Moratorium Constitutes Inverse Condemnation.

5. [Plaintiff's] Cause of Action under the Governmental Tort Liability Act Is an Allowed Claim under the Tennessee Governmental Tort Liability Act.

II. Standard of Review

The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the complaint states a claim upon which relief can be granted; such a motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554

---

[2](...continued)
to "the development or construction of buildings, to include houses, located on lands adjacent to or contiguous with but outside of the subject area proposed for the east-west corridor . . . ."

(Tenn. 1999). In considering a motion to dismiss, a court is to liberally construe the complaint, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See Pursell v. First American National Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *see also Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696-97 (Tenn. 2002). Thus, a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). Making such a determination is a question of law which this court reviews *de novo*, with no presumption of correctness. *Frye v. Blue Ridge Neuroscience Center, P.C.*, 70 S.W.3d 710, 713 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Pertinent to our review of the trial court's grant of the motion to dismiss, we note that Ordinance 50-2010-11, along with other materials, was attached as an exhibit to the City's motion; likewise, Plaintiff filed Mr. McKay's affidavit, with several exhibits. The purpose of a Tenn. R. Civ. P. 12.02(6) motion to dismiss is to determine whether the pleadings alone state a claim upon which relief can be granted, *Western Exp., Inc. v. Brentwood Servs., Inc.*, No. M2008-02227-COA-R3-CV, 2009 WL 3448747, at *4 (Tenn. Ct. App. October 26, 2009), and matters outside the pleadings should not be considered by the court in deciding whether to grant the motion. *Trau-Med*, 71 S.W.3d at 698. However, this court has recognized exceptions to the rule, allowing the consideration of, among other items, matters of public record and items subject to judicial notice. *Western Exp., Inc.*, at *4 (citing *Ind. State Dist. Council of Laborers v. Brukardt*, No, M2007-02271-COA-R3-CV, 2009 WL 426237, at *8 (Tenn. Ct. App. February 19, 2009) (perm. app. denied Aug. 24, 2009); Wright and Miller, *Federal Practice and Procedure, Civil* § 1357, p. 376 (3d ed. 2004)). Such items may be considered by the court without converting the motion to dismiss into one for summary judgment. *Id.*

Tenn. R. Evid. 202(b) provides that a court may, upon request, take judicial notice of all "duly enacted ordinances of municipalities or other government subdivisions[.]" In this case, the trial court's Opinion, which was incorporated into the Order dismissing the complaint, recited that the court "has reviewed the pleadings, the memoranda provided by the attorneys, including the cases cited and other research done by the court . . . ." The record does not contain a request for the trial court to take judicial notice of the ordinance; however, no issue has been raised as to the court's consideration of same. In our resolution of this appeal, we, likewise, have taken judicial notice of Ordinance 50-2010-11; we have not considered any of the other materials filed in support of or in opposition to the motion to dismiss.

III.  Discussion

*A. Claim under the Governmental Tort Liability Act*

The Tennessee Governmental Tort Liability Act ("GLTA"), located at Tenn. Code Ann. §§ 29-20-101-408, codifies the common law rule that "all governmental entities shall be immune from suit for any such injuries which may result from the activities of such governmental entities, subject to statutory exceptions in the Act's provisions." *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73, 79 (Tenn. 2001).  To come within the provisions of the Act, a plaintiff must prove that the claim asserted is one of the "specific causes of action for which the legislature removes immunity." *Halliburton v. Town of Halls*, 295 S.W.3d 636, 638 (Tenn. Ct. App. 2008) (citing Tenn. Code Ann. §§ 29-20-101 and 29-20-201; *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994)).  In *Halliburton*, we summarized the causes of action enumerated in the GTLA for which immunity is removed:

> Section 202 removes immunity for "injuries resulting from the negligent operation by any employee of a motor vehicle or other equipment."  Section 203 removes immunity for "any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway."  Section 204 provides that "[i]mmunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement."  And Section 205 removes immunity for the negligent acts of employees, with various exceptions.

*Halliburton*, 295 S.W.3d at 638-39 (citations omitted).

Plaintiff contends that Tenn. Code Ann. § 29-20-205, which removes governmental immunity for injuries caused by the negligent act or omission of employees, allows Plaintiff to proceed with a claim arising under the Act.[3]  In its brief on appeal, Plaintiff contends that

---

[3]  Tenn. Code Ann. § 29-20-205 provides:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
(1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
(2) False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with

(continued...)

-5-

the City is not immune from suit because "[i]mmunity is removed from any employee or officer for exercise or performance of, or the failure to exercise or perform, a discretionary function related to interference with contract rights, and the failure or refusal to withhold specific authorizations."[4] In the portion of its brief discussing the GTLA claim, Plaintiff argues that "[t]he actions of the appellee constitutes an interference with contract right. Appellant had obtained from the City of Clarksville a Master Plan. The interference caused by the Moratorium is interference with a contract, the Master Plan, and interference with an existing business relationship." In making these contentions, Plaintiff misconstrues and misapplies the statute.

Tenn. Code Ann. § 29-20-205 removes immunity in cases in which the negligent act or omission of a governmental employee causes an injury. Sections (1)-(9) of the statute are exceptions to the removal of the immunity; they are not grounds upon which immunity is removed or causes of action against the governmental entity. Construing the allegations of the complaint liberally, Plaintiff alleges no negligence on the part of any employee acting in the scope of employment and does not allege any fact which would support the removal of the City's immunity in accordance with the statute.

In the same manner, Plaintiff's argument that application of the statute affords a claim for interference with contract rights misconstrues and misapplies the statute.

---

[3](...continued)
contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights;
(3) The issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;
(4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;
(5) The institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;
(6) Misrepresentation by an employee whether or not such is negligent or intentional;
(7) Or results from riots, unlawful assemblies, public demonstrations, mob violence and civil disturbances;
(8) Or in connection with the assessment, levy or collection of taxes; or
(9) Or in connection with any failure occurring before January 1, 2005, which is caused directly or indirectly by the failure of computer software or any device containing a computer processor to accurately or properly recognize, calculate, display, sort, or otherwise process dates or times, . . . .

Tenn. Code Ann. § 29-20-205 (West).

[4] This statement appears to be referring to Tenn. Code Ann. § 29-20-205 (1) and (3).

*B. Takings and inverse condemnation claim*

Plaintiff contends that the moratorium on development contained in Ordinance 50-2010-11 constitutes a "taking", and that the trial court erred when it dismissed Plaintiff's complaint for failure to state a takings claim and a claim for inverse condemnation.

In discussing the cause of action for inverse condemnation in *Edwards v. Hallsdale-Powell Util. Dist. Knox County, Tenn.*, our Supreme Court noted:

> The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. Art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use. *See Jackson v. Metro. Knoxville Airport Auth.,* 922 S.W.2d 860, 861 (Tenn.1996). The Tennessee General Assembly has implemented this provision by its passage of eminent domain and inverse condemnation statutes. *See* Tenn.Code Ann. §§ 29–16–101 to 29–16–127 (2000 & Supp.2002); 29–17–101 to 29–17–1202 (2000).

> "Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted. *See Johnson v. City of Greeneville,* 222 Tenn. 260, 435 S.W.2d 476, 478 (1968). A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vradenburg,* 545 S.W.2d 733, 735 (Tenn.1977).

*Edwards v. Hallsdale-Powell Util. Dist. Knox County, Tenn.*, 115 S.W.3d 461, 464 (Tenn. 2003).[5]

---

[5] Tenn. Code Ann. § 29-16-123 creates a cause of action for inverse condemnation, an action "brought by a property owner to recover the value of real property that has been taken for public use by [the government] even though no formal condemnation proceedings under the government's power of eminent domain have been instituted." *Edwards,* at 464-65 (citing *Johnson v. City of Greeneville*, 435 S.W.2d 476,

(continued...)

In *Lucas v. South Carolina Coastal Council*, the United States Supreme Court held that the United States Constitution's prohibition against the physical appropriation of property without compensation extends to governmental regulation of property. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). Regulatory takings are found when a regulation compels a property owner to suffer a physical invasion onto his or her parcel or where a regulation denies a property owner "all economically beneficial or productive uses of the land." *Id.* A deprivation of beneficial economic use is considered the equivalent of a physical invasion. *Id.* at 1016. Similarly, a regulation that "does not substantially advance legitimate state interests" will also be considered a taking for which compensation is owed. *Id.* at 1015. The concept of a "regulatory taking" was recognized by our Supreme Court in *B&B Enterprises of Wilson County, LLC v. City of Lebanon*, wherein the court noted:

> A regulatory taking results when a governmental regulation places such a burdensome restriction on a landowner's use of its property that the government has for all intents and purposes "taken" the property. In 1922, a near unanimous United States Supreme Court noted that a regulation that goes "too far" is a taking of property, presumably as much as a physical taking or invasion of property is a taking. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415-16, 43 S. Ct. 158, 67 L. Ed. 322 (1922); see also 11 Eugene McQuillen, *Law of Municipal Corporations* § 32.31, at 582-86 (3d ed. Rev. Vol. 2010); David L. Callies, *Takings: An Introduction and Overview*, 24 U. Haw. L. Rev. 441, 443 (2002).

*B&B Enterprises of Wilson County, LLC*, 318 S.W.3d at 845.[6]

No bright line rule or formula exists for determining when a regulation "goes too far" such that it is recognized as a taking, and the United States Supreme Court has repeatedly declined to adopt such a formula; the Court has consistently held that multiple factors must be examined to determine whether a regulation amounts to a taking. *Tahoe-Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 326-37 (2002). In *Tahoe*, the Court considered a challenge by a nonprofit membership corporation representing owners of improved and unimproved parcels of real estate in the Lake Tahoe area of Nevada

---

[5](...continued)
478 (Tenn. 1968)).

[6] The Court determined that "because of its procedural posture, this case is not the proper vehicle for deciding the existence or scope of a regulatory takings claim under Article I, Section 21 [of the Tennessee Constitution]." *B&B Enterprises of Wilson County, LLC v. City of Lebanon*, 318 S.W.3d 839, 846 (Tenn. 2010).

to a 32-month moratorium on development as being a taking of their property without just compensation. The court rejected the owners' desire that the court establish "a categorical rule requiring compensation whenever the government imposes such a moratorium on development." *Id*. at 320. Instead, the Court concluded that the answer to the "abstract question" of whether a temporary moratorium constitutes a taking depended on the "particular circumstances of the case" and was best analyzed under the framework laid out in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978). *Id*. at 320-21.

In *STS/BAC Joint Venture v. City of Mt. Juliet*, this court described the *Penn Central* analytical framework as follows:

> Under *Penn Central,* regulatory takings claims require "ad hoc, factual inquiries" involving a balancing of the public and private interests involved in the particular case. The factors to be considered include (1) the economic impact of the regulation, (2) the degree to which the regulation has interfered with the owner's reasonable "distinct investment-backed" expectations concerning the property, and (3) the character of the regulatory action. *Penn Central,* 438 U.S. at 124-25; 98 S.Ct. 2646. Other relevant factors may also be considered. The analysis, however, must focus on "the parcel as a whole." *Tahoe-Sierra Preservation Council,* 535 U.S. at 326-27, 122 S.Ct. at 1481 *Penn Central,* 438 U.S. at 130-131, 98 S.Ct. 2646.

*STS/BAC Joint Venture v. City of Mt. Juliet*, M2003-00171-COA-R3CV, 2004 WL 2752809 at *4 (Tenn. Ct. App. Dec. 1, 2004). It is within this framework that we consider the allegations of Plaintiff's amended complaint.

The salient allegations of the amended complaint relative to this cause of action include the following:

> 3. Durrett, by Deed of Record, owns real property within Clarksville, Tennessee (Herein the "Durrett Real Property").
> 4. In association with a proposed highway development, the City of Clarksville, . . . did enact a "Moratorium" related to a significant portion of the Durrett Real Property. This Moratorium was designed to stop the development of the Durrett Real Property. The Moratorium was enacted because of the proposed building of a new "East West Corridor" roadway in Clarksville[.]
> 5. The Durrett Real Property has been approved for development, was platted and Durrett was prepared to conduct the development for profit.

7. The Moratorium did stop all development of the Durrett Real Property by action of the Clarksville City Council. No compensation was offered or paid.[7]

8. This Moratorium constitutes a taking of the Durrett Real property without compensation.

\*\*\*

10. The City Council enacted this Moratorium knowing that the building of the East West Corridor was not expected to take place, if it took place at all, for at least 11 to 13 years.

11. At the time the City Council enacted the Moratorium, the City, by its agents, had not identified the actual route that will be used for development of the highway. There was no specific building plan in place which called for the use of the Durrett Real Property in the building of the East West Corridor. Only broad proposals were made requesting the route of a future roadway which was not funded or approved.

12. At the time the City Council enacted the Moratorium, the City, by its agents, had not developed any plans for the building of the East West Corridor. The East West Corridor was, at best, in the discussion stage. Early studies identified at least three routes which the East West Corridor may take, which may, or may not, involve and require the use of a portion of, the Durrett real Property.

13. At the time the City Council enacted the Moratorium, the City, by its agents, had not received any environmental studies necessary for the route of the East West Corridor to be selected.

14. At the time the City Council enacted the Moratorium, the City, by its agents, knew that Durrett was in the business of real estate development, and had a development plan for the Durrett Real Property. The City by its agents, knew that Durrett had an existing business relationship with a specific identifiable class of third persons, specifically, purchasers for development[.]

15. At the time the City Council enacted the Moratorium, the City, by its agents, knew of the Plaintiff's business dealings with others and knew specifically of the intent to develop the Durrett Real Property for profit.

The factual allegations of the complaint, construed liberally and presumed to be true, and giving the Plaintiff the benefit of reasonable inferences arising therefrom, are sufficient to be analyzed under the standards set forth in *Penn Central* to determine whether the moratorium established in the ordinance constituted a regulatory taking of Plaintiff's property. We express no opinion as to whether the facts alleged, if proven at trial, would support a holding that the moratorium constitutes a taking; we hold only that there are

---

[7] The Amended Complaint did not contain a sixth allegation.

sufficient factual allegations to state a claim for relief under the inverse condemnation and regulatory taking causes of action asserted by Plaintiff.

IV.  Conclusion

For the foregoing reasons, we reverse the trial court's dismissal of the takings and inverse condemnation claims and remand the case for further proceedings with respect to those claims; in all other respects, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE